## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE FLINTKOTE COMPANY, | : |
| | : CIVIL ACTION NO. |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| AVIVA PLC, formerly known as | : |
| COMMERCIAL UNION ASSURANCE | : |
| COMPANY LTD., | : |
| | : |
| Defendant. | : |

## COMPLAINT

Plaintiff, The Flintkote Company ("Flintkote"), by and through its attorneys, complaining of the defendant, Aviva PLC, formerly known as Commercial Union Assurance Company Ltd. ("Aviva"), alleges and says:

## NATURE OF ACTION

1.  Flintkote seeks an order compelling Aviva, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") to enter into arbitration with Flintkote to determine Aviva's responsibility under an agreement with Flintkote to pay insurance proceeds as a result of underlying asbestos claims. Alternatively, Flintkote seeks a declaration as to the parties' rights, duties and obligations under certain Aviva insurance policies and its agreement with Flintkote. Flintkote also seeks damages, including consequential damages, punitive damages, and an award of attorneys' fees, as well as an order finding that Aviva has breached its contracts with Flintkote and has engaged in bad faith claims handling.

ME1 14835963v.1

## IDENTITY OF THE PARTIES

2.     Plaintiff, The Flintkote Company ("Flintkote"), is a Delaware corporation presently headquartered in San Francisco, California.

3.     Defendant Aviva PLC ("Aviva") is a corporation organized under the laws of the United Kingdom and headquartered in London, England, and is the successor to Commercial Union Assurance Company Ltd., also a corporation organized under the laws of the United Kingdom and previously headquartered in London, England.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this dispute based on diversity of citizenship under 28 U.S.C. §1332(a), as the amount in controversy exceeds $75,000 and the dispute is between a plaintiff that is incorporated in Delaware, with current headquarters in California, and a defendant that is a United Kingdom corporation with headquarters in London, England.  In addition, this Court has subject matter jurisdiction over this dispute under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq.  Further, Flintkote has recently confirmed a plan of reorganization in a bankruptcy case still open and pending in the United States Bankruptcy Court for the District of Delaware, administered as Bankruptcy Petition No. 04-11300-JKF, et seq.  That confirmation order has been appealed to the District of Delaware, which is also currently entertaining another appeal from the bankruptcy case in Civil Action 12-1299-LPS.  Because this Complaint initiates a civil proceeding "related to" Flintkote's case under title 11, this Court also enjoys subject matter jurisdiction under 28 U.S.C. §1334(b).

5.     This Court has personal jurisdiction over defendant because it, or its predecessor, has issued and/or subscribed to policies of insurance to Delaware citizens, and further because defendant agreed in the policies of insurance at issue in this litigation to "submit to the

jurisdiction of any Court of competent jurisdiction within the United States" and to "comply with all requirements necessary to give such Court jurisdiction."

6. Venue is proper in this district under 28 U.S.C. §1391(c)(3) because defendant is not resident in the United States.

## FACTUAL ALLEGATIONS

7. Flintkote has been named as a defendant in hundreds of thousands of lawsuits by individuals alleging they were injured as a result of exposure to Flintkote's asbestos-containing products.

8. In or around 1985, Flintkote, along with certain of its insurers, entered into the Agreement Concerning Asbestos-Related Claims ("Wellington Agreement"), dated June 19, 1985. On April 12, 1989, Aviva and Flintkote entered into a settlement agreement whereby Aviva agreed to be bound by the terms of the Wellington Agreement as if it were a signatory thereto, with certain specified additional terms ("1989 Agreement").

9. The Wellington Agreement established the Asbestos Claims Facility ("ACF"), a non-profit claims handling center that coordinated claim payments on behalf of dozens of asbestos defendants. The signatories to the agreement sought to reduce asbestos litigation awards while lowering the associated costs and the agreement encouraged settlements in place of litigation. The Wellington Agreement also provided an alternative dispute resolution ("Wellington ADR") procedure, including binding arbitration, for certain disputes between signatory insureds and insurers.

10. Aviva subscribed to certain policies of insurance issued in the London insurance market (hereinafter "the Policies"), and has represented its share of limits of the Policies as follows:

| Policy No. | Policy Period | Aviva's Share of Limits of Liability |
|---|---|---|
| 620118 | 03/15/79 – 03/15/80 | 5.435% |

ME1 14835963v.1

| | | |
|---|---|---|
| 620119 | 03/15/79 – 03/15/80 | 4.178% |
| 620120 | 03/15/79 – 03/15/80 | 4.514% |
| 620173 | 03/15/80 – 03/15/81 | 5.828% |
| 620174 | 03/15/80 – 03/15/81 | 4.557% |
| 620175 | 03/15/80 – 03/15/81 | 1.690% |
| 620241 | 03/15/81 – 03/15/84 | 5.896% |
| 620242 | 03/15/81 – 03/15/84 | 2.078% |
| 620243 | 03/15/81 – 03/15/84 | 1.724% |
| 620244 | 03/15/81 – 03/15/84 | 3.355% |

The aggregate limits of the Policies were denominated in Canadian dollars.

11.    In or around December 2002, Flintkote's asbestos-related bodily injury and other claims exhausted the insurance underlying the policies to which Aviva subscribed and Flintkote began billing Aviva and other London Companies for defense and indemnity expenses with respect to asbestos-related claims all of which were filed, resolved, and paid prior to Flintkote's Bankruptcy Petition ("Pre-Filing Claims").

12.    From and after December 2002, Flintkote issued periodic billings to Aviva based on asbestos-related claims defense and indemnity expenses incurred during such period, all of which expenses were incurred and paid by Flintkote in United States dollars. Each such billing stated the amounts allocated to policies to which Aviva subscribed and provisionally tracked the remaining aggregate limits of the subject insurance policies assuming the billing was paid in a timely fashion. Aviva made occasional, irregular, and partial payments on said billings. The policy aggregate limits were subject to adjustment based on foreign currency exchange rates in effect at the time of payment. The account was subject to possible credits and adjustments based

on settlements with and payments by other Flintkote insurers.

13. The billings to Aviva on Pre-Filing Claims continued through October 2007. In December 2010, Flintkote entered into a final settlement on insurance policies with another insurer not at issue here giving rise to possible credits against Aviva's account under the terms of Section XX of the Wellington Agreement, the materiality of which Flintkote denies. In September 2012, Aviva demanded that its account receive credit for and its unpaid balance be offset by the settlement proceeds received by Flintkote pursuant to the 2010 settlement.

14. Aviva continues to refuse to pay approximately US$1,500,000 of Pre-Filing Claims billed on its account. Aviva's remaining limits under the Policies are approximately CAD$12 million.

15. On May 1, 2004 ("Petition Date"), Flintkote filed a reorganization case pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, administered as Bankruptcy Petition No. 04-11300-JKF, et seq.

16. Flintkote, the Asbestos Claimants Committee and the Future Claimants Representative proposed a Plan of Reorganization whereby Flintkote's asbestos liabilities would be channeled to a trust under Section 524(g) of the Bankruptcy Code.

17. On December 21, 2012, the United States Bankruptcy Court for the District of Delaware issued an Order confirming Flintkote's Plan of Reorganization. On January 4, 2013, Imperial Tobacco of Canada, Limited, filed an appeal of the Confirmation Order. Said appeal is pending before the United States District Court, District of Delaware.

18. On June 2, 2006, Flintkote initiated an ADR proceeding under the Wellington Agreement against the London Companies, including Aviva, that had unpaid billings. Despite a provision in the 1989 Agreement providing that disputes would be resolved through litigation,

Aviva consented to and agreed to enter into the ADR process, along with the other London Companies that subscribed to the same policies. Aviva signed written agreements regarding that process, including documents selecting and agreeing to pay for a mediator and setting up an escrow pursuant to the ADR process. A mediator was selected and all of the London Companies, including Aviva PLC, actively participated. Aviva enjoyed the benefits of this ADR process for over six years.

19. In 2008, as part of the Wellington ADR, Flintkote and the London Companies that had not yet settled, including Aviva, negotiated an escrow agreement pursuant to which, upon information and belief, Aviva and the London Companies deposited amounts equivalent to the outstanding receivable into escrow, or into their attorneys' trust account.

20. Prior to depositing said monies to satisfy the billings for Pre-Petition Claims, Aviva and the London Companies were permitted to perform an extensive audit of Flintkote claims files in order to satisfy themselves that the billings were true and accurate. Despite having agreed to pay legitimate claims, Aviva to this day has refused to authorize the release of the escrow and trust account funds.

21. By 2012, after 6 years of negotiation under the Wellington ADR process the parties reached an impasse and moved to commence binding arbitration. The parties have, for several months, been negotiating certain minor modifications to the arbitration procedures provided in the Wellington Agreement to improve its efficiency and tailor the procedure to the issues and matters at hand.

22. Throughout the Wellington ADR process, Aviva actively participated and engaged in a course of action confirming its consent to arbitration. After receiving the benefits of the Wellington ADR process and its participation therein, Aviva is now attempting to

withdraw its consent and to reverse its prior participation in the Wellington ADR process to Flintkote's detriment. Aviva at all times during this period represented to Flintkote that it would fully participate in the Wellington ADR and at no time prior to December 21, 2012 did Aviva ever suggest that it did not intend to participate fully in the arbitration.

23. Aviva has now refused to arbitrate its disputes with Flintkote. On December 24, 2012, Aviva filed a Motion for Relief from Stay in the Bankruptcy Court in order to initiate litigation against Flintkote seeking some of the relief sought by Flintkote *infra*.

24. Flintkote and Aviva disagree on how the Policies and the 1989 Agreement apply to the reimbursement of outstanding Pre-Petition Claims and future asbestos-related claims against Flintkote, including with respect to the following issues:

    a. Whether Aviva has any further obligation to reimburse Flintkote for Pre-Petition Claims;

    b. To the extent that Aviva has breached its obligations to reimburse Flintkote for Pre-Petition Claims, the amount of interest due to Flintkote under contract and law;

    c. Whether under the Policies and the 1989 Agreement Aviva must pay defense costs within the limits of liability or in addition to the limits of liability;

    d. To the extent the Policies are subject to limits of liability stated in Canadian dollars, and claims have been or are resolved in United States dollars, the appropriate exchange rate for determining the reduction in remaining limits when Flintkote is reimbursed for asbestos-related claim allocations to Aviva;

    e. Whether, pursuant to the 1989 Agreement, Aviva is entitled to recoupment or set-off and interest as a result of Flintkote's settlements with other insurers;

    f. Whether Aviva's obligations to reimburse Flintkote for asbestos-related claims includes its coverage obligations under Policy Nos. 620118, 620119 and 620120;

    g. Whether the limits of the Policies in the March 15, 1982 – July 15, 1982

        period should be prorated as a result of the unilateral imposition during the policy period of an exclusion for asbestos-related bodily injury claims by Aviva and the other London insurers subscribing to certain of the Policies;

   h.   If a Section 524(g) Trust is confirmed and becomes effective, whether Aviva's obligation to pay a claim arises when the Trust agrees to pay a claim in the future or when the actual payment is made by the Trust and whether the amount of Aviva's coverage obligation is based on the liquidated value of the claim as determined by the Trust or the payment percentage amount that the Trust actually pays.

## COUNT I

## DEMAND FOR ARBITRATION

25.    Flintkote realleges and incorporates by reference Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26.    The FAA provides in relevant part that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

27.    Aviva agreed to participate in the Wellington ADR process by, among other things, signing the mediation document and written escrow agreement, and fully participating with the other London Companies in every step of the Wellington ADR for over six (6) years. Aviva's actions and writings demonstrate it consented to the ADR. Aviva, after having received the benefits of the ADR process, now wishes to withdraw from the process and file suit invoking the provision of the 1989 Agreement providing litigation as the dispute resolution mechanism.

28.    By reason of the foregoing, Flintkote is seeking an Order from this Court compelling Aviva to continue to participate in binding arbitration.

## COUNT II

## DECLARATORY JUDGMENT

29. Flintkote realleges and incorporates by reference Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. In the event this Court does not order arbitration, Flintkote seeks alternate relief in the form described *infra*.

31. An actual controversy has arisen and exists between Aviva and Flintkote regarding how the Policies and the 1989 Agreement apply to Pre-Petition Claims and will apply to future asbestos-related claims.

32. A judicial determination is necessary and appropriate at this time in order to ascertain the rights and obligations of the parties under the Policies and the 1989 Agreement. Flintkote seeks a judicial determination of its rights under the Policies and the 1989 Agreement for reimbursement for Pre-Petition Claims and its rights with respect to the payment of defense and indemnity expenses for future asbestos-related claims.

## COUNT III

## BREACH OF CONTRACT

33. Flintkote realleges and incorporates by reference Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. Flintkote has incurred and will continue to incur defense costs and indemnity payments in connection with the asbestos-related claims.

35. Aviva has failed and refused to reimburse Flintkote for defense costs and indemnity payments incurred with respect to the Pre-Petition Claims.

36. By reason of the foregoing, Aviva has breached its obligations under the Policies

and under the 1989 Agreement, and is liable to Flintkote for money damages not limited to the Policy limits, costs and payments and all other sums incurred by Flintkote or which may be incurred, together with the costs and disbursements of this action, including but not limited to reasonable attorneys' fees and pre-judgment and post-judgment interest.

## COUNT IV

## BREACH OF DUTY OF GOOD FAITH

37. Flintkote realleges and incorporates by reference Paragraphs 1 through 36 and makes them a part hereof as if fully set forth at length herein.

38. Despite requests by Flintkote for reimbursement of defense and indemnity payments for Pre-Petition Claims, and despite the terms of the Policies and the 1989 Agreement, Aviva has refused to reimburse Flintkote without stating a reasonable basis for its refusal.

39. Despite requests by Flintkote for reimbursement of defense and indemnity payments for Pre-Petition Claims, and despite the terms of the Policies and the 1989 Agreement, Aviva has failed and refused to properly and timely investigate Flintkote's claims, has not known or analyzed its obligations and has failed to state a reasonable basis for its coverage position.

40. Despite requests by Flintkote for reimbursement of defense and indemnity payments for Pre-Petition Claims, and despite the specific promise by Aviva not to withhold payments or parts thereof where such payments or parts thereof are not in dispute, Aviva has failed and refused to fully or partially reimburse Flintkote.

41. Aviva had and has a duty to deal in good faith with Flintkote in connection with the handling and payment of claims under the Policies and the 1989 Agreement.

42. Aviva breached its duty of good faith by repeatedly refusing to reimburse Flintkote for defense and indemnity payments for certain of the Pre-Petition Claims without any

reasonable justification.

43. Aviva has engaged in bad-faith delay and fraudulent inducement by signing on to the Wellington ADR process, thus avoiding suit for years in addition to taking the benefits of the ADR process, while never intending to negotiate in good faith throughout the entire ADR process including binding arbitration.

44. Aviva has, by its actions, unreasonably caused Flintkote to suffer extra costs.

45. As a result of Aviva's bad faith refusal to meet its contractual obligations under the Policies and the 1989 Agreement, Flintkote is entitled to recover money damages not limited to the Policy amounts, costs and payments and all other sums incurred by Flintkote or which may be incurred, together with the costs and disbursements of this action, including but not limited to reasonable attorneys' fees, pre-judgment and post-judgment interest, and punitive damages.

## COUNT V

## ACTION ON ACCOUNT

46. Flintkote realleges and incorporates by reference Paragraphs 1 through 45 and makes them a part hereof as if fully set forth at length herein.

47. Flintkote's periodic billings, including aggregate limit tracking, and Aviva's payments thereon and demands for credits and offsets thereto constitute a mutual and running account (the "Account").

48. Aviva is in arrears on the Account in the amount of approximately US$1,500,000, plus interest, and has failed and refused to pay the amounts due and owing on the Account.

49. As a result, Aviva is liable to Flintkote for satisfaction of the billings for Pre-

11

Petition Claims and all other sums incurred by Flintkote or which may be incurred, together with the costs and disbursements of this action, including but not limited to reasonable attorneys' fees and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Flintkote demands judgment in its favor against Aviva as follows:

1. That this Court enter an order requiring Aviva to continue with the binding Wellington arbitration with Flintkote; or, in the alternative,

2. That this Court enter judgment that:

    a. Aviva is obligated to reimburse Flintkote for Pre-Petition Claims, along with interest due to Flintkote;

    b. The Policies pay defense costs in addition to the limits of liability;

    c. To the extent the Policies are subject to limits of liability stated in Canadian dollars, the appropriate exchange rate for reimbursement payments for asbestos-related claims is the more favorable of the foreign exchange rate at the time the claims are paid by Aviva, or for amounts currently unpaid, the date of the filing of this Complaint;

    d. Aviva is not entitled to recoupment or set-off and interest as a result of Flintkote's settlements with other insurers;

    e. Flintkote is an insured under Policy Nos. 620118, 620119 and 620120;

    f. The limits of the Policies in the March 15, 1982 – July 15, 1982 period should not be prorated;

    g. If a Section 524(g) Trust is confirmed and becomes effective, that Aviva's obligation to pay a claim arises when the Trust agrees to pay a claim in the future and that the amount of Aviva's coverage obligation is based on the full liquidated value of the claim as determined by the Trust.

3. Enjoining Aviva from failing and refusing (a) to reimburse Flintkote for defense costs and indemnity payments for Pre-Petition Claims and for any future asbestos-related claims

and (b) requiring that Aviva reimburse Flintkote for defense costs and indemnity payments for Pre-Petition Claims;

4. Granting Flintkote specific performance of the Policies and the 1989 Agreement;

5. For money damages, not limited to the Policy limits, and including direct, compensatory and consequential damages, together with pre-judgment and post-judgment interest;

6. Ordering Aviva to make full payment on its Account,

7. For costs of suit;

8. For counsel fees;

9. For punitive damages; and

10. For such and other further relief as the Court may deem just and proper.

**McCARTER & ENGLISH, LLP**

/s/ *Katharine L. Mayer*
Michael P. Kelly (DE# 2295)
Katharine L. Mayer (DE# 3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
Telephone:  (302) 984-6300
Facsimile:  (302) 984-6399
mkelly@mccarter.com
kmayer@mccarter.com

Dated:  January 17, 2013                                                              Attorneys for Plaintiff