**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE FLINTKOTE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AVIVA PLC, formerly known as COMMERCIAL UNION ASSURANCE COMPANY LTD.,<br><br>Defendant. | C.A. No. 1:13-cv-00103-LPS |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**


Of Counsel:

Fred L. Alvarez (admitted PHV)
Arthur J. McColgan, II (admitted PHV)
Walker Wilcox Matousek LLP
One North Franklin Street
Suite 3200
Chicago, IL 60606
(312) 244-6700 (telephone)
(312) 244-6800 (facsimile)
falvarez@wwmlawyers.com
amccolgan@wwmlawyers.com

**DILWORTH PAXSON LLP**

Thaddeus J. Weaver (Id. No. 2790)
One Customs House
704 King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19801
(302) 571-8867 (telephone)
(302) 571-8875 (facsimile)
tweaver@dilworthlaw.com

Attorneys for Defendant Aviva PLC, formerly known as Commercial Union Assurance Company Ltd.


Dated: November 5, 2014

TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDING ........................................................ 1

II. SUMMARY OF ARGUMENT ........................................................ 3

III. STATEMENT OF FACTS ........................................................ 4

A. The Coverage Disputes ........................................................ 4

B. After Aviva Moved to Lift the Automatic Stay and Filed its Draft California Complaint in Flintkote's Bankruptcy, Flintkote Filed This Anticipatory Suit. .............. 7

IV. ARGUMENT ........................................................ 9

A. Flintkote's Complaint Should Be Dismissed Under the Anticipatory Filing Exception to the "First-Filed" Rule ........................................................ 9

B. The Court Should Exercise Its Discretion to Dismiss This Suit ........................... 13

C. In the Alternative, This Action Should be Transferred to the Northern District of California under 28 USC § 1404(a). ........................................................ 14

D. The "Service of Suit" Clause and Subsection 1391(c)(3) do not Preclude the Relief Requested. ........................................................ 18

V. CONCLUSION ........................................................ 20

**TABLE OF AUTHORITIES**

**Cases**

*Accord Westchester Surplus Lines Ins. Co. v. The Pass Condo. Ass'n, Inc.*, 2009 WL 1904309 (S.D. Ala., July 1, 2009) .......... 18

*Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671 (D. Del. 2005) .......... 18

*Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967). .......... 13

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002) .......... 14, 15, 16, 17

*Automotive Serv. Ass'n of New Jersey, Inc. v. Rockland Exposition, Inc.*, 2008 WL 5244282, (D.N.J. Dec. 12, 2008) .......... 16

*Berg v. MTC Electronics Technologies,* 61 Cal. App. 4th 349 (Cal. Ct. App. 1998) .......... 18

*Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Ret. Sys.*, 57 F.3d 638 (8th Cir. 1995) .......... 10

*Cancer Genetics, Inc. v. Kreatech Biotechnology,* 2007 WL 4365328 (D.N.J. Dec. 11, 2007) .......... 17

*Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 948 A.2d 1285 (2008) .......... 18

*Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586 (Ind. Ct. App. 2003). 18

*City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co*., 197 U.S. 178 (1905) .......... 19

*Cobe Labs., Inc. v. Baxter Int'l, Inc.*, 1990 WL 100233 (D. Colo. June 14, 1990) .......... 16

*CQGT, LLC v. Trading Techs. Int'l, Inc.,* 2006 WL 2711770 (D. Colo. Sept. 21, 2006) 16

*Employers Ins. of Wausau v. Fox Entertainment Grp., Inc.*, 522 F.3d 271 (2d Cir. 2008) .......... 9, 11

*Equal Employment Opportunity Comm'n v. Univ. of Penn.*, 850 F.2d 969 (3d Cir. 1988) .......... 9, 10, 11

*Factors Etc., Inv. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) .......... 10

*Flintkote Co. v. Aviva PLC*, 2014 WL 5033218 (3d Cir. Oct. 9, 2014) .......... 1, 2, 7

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 2009 WL 3568644 (N.D. Cal. Oct. 27, 2009) .......... 6, 7

*In re The Flintkote Co. & Flintkote Mines, Ltd.*, 486 B.R. 99 (Bankr. D. Del. 2012).......... 4, 5

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 38 Cal. Rptr.3d 716 (Cal. App. 2 Dist., 2006), *cert. denied* 549 U.S. 946 (Oct. 2, 2006) .......... 5

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).......... 14

*Keymer v. Mgmt. Recruiters, Int'l, Inc.*, 169 F.3d 501, 503 n.2 (8th Cir. 1999).......... 9

*Maertin v. Armstrong World Industs., Inc.*, 241 F.Supp.2d 434 (D.N.J. 2002).......... 9

*Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983).......... 13

*Nw. Cent. Pipeline Corp. v. Mesa Petroleum Co.,* 576 F. Supp. 1495 (D. Del. 1983)...... 19

*Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990) .......... 10

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237 (1952).......... 19

*SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) .......... 13

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) .......... 17

*Skylark Inv. Properties, LLC v. Navigators Ins. Co.*, 2009 WL 2913443 (S.D. Cal., Sept. 10, 2009) .......... 18

*St. Clair Intellectual Prop. Consultants, Inc. v. Mirage Sys., Inc.*, 419 F. Supp. 2d 620 (D. Del. 2006) .......... 13

*Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746 (7th Cir. 1987) .......... 13

*Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996 (N.D. Ga. 1983) .......... 12

*Ven-Fuel, Inc. v. Dept. of the Treasury*, 673 F.2d 1194 (11th Cir. 1982).......... 13

*Woodbolt Distribution, LLC v. Natural Alternatives Intern., Inc.*, 2013 WL 247041 (D. Del. 2013) .......... 14

**Statutes**

11 U.S.C. § 362.......... 1
28 U.S.C. § 1391.......... 19
28 U.S.C. § 1404.......... 1, 11, 14, 16, 18
28 U.S.C. § 2201.......... 13

**Other Authorities**

3 C.J.S. Aliens § 183 ........ 19
3C Am. Jur. 2d Aliens and Citizens § 2129 ........ 19

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 1
FRBP 4001(a)(3) ........ 2

Defendant Aviva PLC, formerly known as Commercial Union Assurance Company Ltd. ("Aviva"),[1] submits this memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the instant suit filed by The Flintkote Company ("Flintkote") in favor of a renewed suit by Aviva in the Northern District of California. In the alternative, Aviva requests transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I. NATURE AND STAGE OF PROCEEDING

On September 30, 2013, this Court granted Flintkote's motion to compel arbitration and denied as moot Aviva's motion to dismiss or transfer. (D.I. 28, 29). Aviva timely appealed the September 30, 2013 rulings to the United States Court of Appeals for the Third Circuit. (D.I. 32). On October 9, 2014, the Third Circuit reversed the order granting Flintkote's motion to compel arbitration and vacated the order denying Aviva's motion to dismiss or transfer. The case was remanded for this Court to address the venue issue. *Flintkote Co. v. Aviva PLC*, No. 13-4055, 2014 WL 5033218, at *6 (3d Cir. Oct. 9, 2014).

As the Court may recall, Aviva and Flintkote engaged in lengthy mediated settlement discussions to resolve certain disputes concerning insurance coverage for asbestos bodily injury claims against Flintkote. On December 24, 2012, after the parties reached an impasse, Aviva "moved in the Delaware Bankruptcy Court to lift the automatic stay imposed under 11 U.S.C. § 362(d) 'to allow it to pursue a declaratory

[1] In our prior motion to dismiss or transfer, we used "CU U.K." to refer to Aviva PLC, formerly Commercial Union Assurance Company Ltd. To avoid confusion, we now use "Aviva" to be consistent with the Third Circuit's decision in this matter.

judgment action in the United States District Court for the Northern District of California to determine the scope of insurance coverage available for [Flintkote] under certain insurance policies' Aviva had issued." *Id.* at *2. A copy of the Motion to Lift the Stay and draft California complaint are attached as Exhibit A.

On January 17, 2013, while Aviva's motion to lift the stay was pending before the Bankruptcy Court, Flintkote filed this action. (D.I. 1). Flintkote also opposed Aviva's motion to lift the stay. On February 4, 2013, the bankruptcy court granted Aviva's motion to lift the stay. Pursuant to FRBP 4001(a)(3), Aviva could not file its action in California until February 19, 2013, which it did on that day (the "California Action"). A copy of the complaint in the California Action is attached as Exhibit B. Both lawsuits concern disputes over the parties' rights and obligations under the 1989 settlement agreement between Aviva and Flintkote and certain insurance policies to which Aviva subscribed in connection with Flintkote's asbestos bodily injury claims.

"On November 21, 2013, in light of [this Court's] order compelling arbitration, the California District Court dismissed Aviva's suit without prejudice." *Flintkote*, 2014 WL 5033218, at *3. Notably, the California court specifically contemplated that the Third Circuit might reverse. Consequently, there is nothing in the dismissal order precluding the case from going forward in California or suggesting that it should go forward in Delaware: "If CU U.K. is successful with its Third Circuit appeal, it may once again move the Delaware court to dismiss or transfer the case, and it will be provided a full opportunity to vindicate its rights in that court." A copy of the decision from the California court is attached hereto as Exhibit C.

Consistent with the Third Circuit's remand, this motion seeks dismissal of Flintkote's complaint in favor of a renewed suit by Aviva in the Northern District of California, or, in the alternative, the transfer of this action to the Northern District of California. California is the proper forum. Flintkote is headquartered in California, litigated insurance coverage issues in California with various insurers, including Aviva, for approximately 30 years, and vociferously argued in other litigation for application of California law against it insurers.

## II. SUMMARY OF ARGUMENT

But for the automatic stay in Flintkote's bankruptcy case, Aviva would have filed first in its chosen forum. Instead, Flintkote used the automatic stay as a sword and filed the instant action first, before Aviva was allowed to file the California action. While courts usually give priority to the "first filed" action, the "first filed" rule is inapplicable when the putative "first filer" jumped the gun. Here, Aviva filed a motion to lift the stay with the Bankruptcy Court, attached a draft of the complaint it planned to file in the Northern District of California, and stated that it would file the suit as soon as the Bankruptcy Court lifted the stay, clearly evidencing its intent to file the California Action. Flintkote, shielded but not bound by the automatic stay, used the stay to file ahead of Aviva in Delaware in an improper attempt to forum shop and avoid the application of California law. Flintkote should not be allowed to use the bankruptcy stay as a sword, rather than a shield, to gain a tactical litigation advantage it would not otherwise have.

Several courts, including the Third Circuit, have recognized an exception to the "first-filed" rule when, as here, the first lawsuit was in anticipation of the "second" filing

in an attempt to gain an advantage. This Court therefore should grant Aviva's motion to dismiss this action in favor of a renewed California Action that, but for the automatic stay, Aviva would have filed first in the Northern District of California. Alternatively, this action should be transferred to the Northern District of California.

## III. STATEMENT OF FACTS

### A. The Coverage Disputes

Flintkote was sued by claimants alleging injuries caused by exposure to Flintkote's asbestos-containing products that it manufactured until sometime in the 1980's. *In re The Flintkote Co. & Flintkote Mines, Ltd.*, 486 B.R. 99, 106 (Bankr. D. Del. 2012).

In the mid-1980s, Flintkote sued some of its insurers, including Aviva, in state court in San Francisco, California, seeking insurance coverage for its asbestos-related claims. Flintkote's disputes with certain of its insurers, but not Aviva, were resolved when it entered into the "Agreement Concerning Asbestos-Related Claims," dated June 19, 1985, commonly known as the "Wellington Agreement." (Attached as Ex. D.) Aviva, which subscribed severally to various policies of insurance issued in the London insurance market under which Flintkote sought coverage (the "CU U.K. Policies"), did not enter into the Wellington Agreement. Instead, on April 12, 1989, Aviva and Flintkote entered into a separate agreement to resolve the disputes at issue in the then pending San Francisco coverage litigation concerning asbestos bodily injury claims. *See* "Agreement Between the Flintkote Company and Commercial Union Assurance Company, Ltd." ("CU U.K. Agreement," attached as Ex. E.)

On May 1, 2004 (the "Petition Date"), Flintkote filed its Chapter 11 bankruptcy case. *In re The Flintkote Co.*, 486 B.R. 99 at 106. Confirmation of Flintkote's Plan of Reorganization is currently on appeal to the Third Circuit as Case No. 14-3367. Pursuant to the Plan, Flintkote's asbestos liabilities are to be channeled to a trust under Section 524(g) of the Bankruptcy Code. *In re Flintkote Co.*, 486 B.R. at 107-108. The 524(g) Trust in turn is to receive the right to pursue insurance coverage for claims it pays. *Id*.

Flintkote and Aviva disagree on how the CU U.K. Policies and the CU U.K. Agreement apply to the reimbursement of outstanding Pre-Petition Claims and future Asbestos-Related Claims against Flintkote. The disputes are summarized in Aviva's California complaint. (Ex. B). Among the issues to be resolved between Flintkote and Aviva are whether Aviva's obligation to pay a claim, subject to the terms, conditions and exclusions of the CU U.K. Policies, arises when the §524 Trust agrees to pay a claim in the future or when actual payment is made and whether the amount of Aviva's coverage obligation, if any, is based on the value of the claim as determined by the §524 Trust or the amount that the Trust actually pays. (Id.at ¶ 21(g)). This question has been answered by a California appellate court. *See Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 38 Cal. Rptr.3d 716 (Cal. App. 2 Dist., 2006), *cert. denied* 549 U.S. 946 (Oct. 2, 2006).

Flintkote has litigated coverage issues related to its asbestos claims with its insurers for decades, in California under California law. [2] After Flintkote and most of its insurers resolved issues related to insurance coverage for asbestos bodily injury claims

[2] *The Flintkote Corporation v. American Mutual Liability Insurance Co*, No. 80 859 (Cal. Super.) (prior coverage litigation between Flintkote and many of its insurers, including Aviva); *The Flintkote Company v. General Accident Assurance Company of Canada*, No. C 04-01827 MHP (N.D. Cal.) (removed from Superior Court of San Francisco). Flintkote's other insurers have also brought coverage litigation concerning Flintkote's asbestos claims in San Francisco, California. *Mt. McKinley Ins. Co and Everest Reinsurance Co. v. The Flintkote Company*, case no. 407614 (Cal. Super.).

through the Wellington Agreement and other agreements (such as the CU U.K. Agreement), Flintkote continued to litigate with insurers over asbestos "property damage" claims. Flintkote relied on California law in its efforts to secure coverage for its asbestos "property damage" claims. Indeed, the California court in that litigation issued a 200 plus page opinion extensively applying California law. (Attached as Ex. F.) More recently, in litigation brought by Flintkote in California against Aviva's Canadian subsidiary, Flintkote again argued for the application of California law with respect to insurance coverage for its asbestos bodily injury claims. *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, No. C 04-1827, 2009 WL 3568644 (N.D. Cal. Oct. 27, 2009). In its opposition brief dated September 14, 2009 (D.I.379 in that case) leading up to the Northern District of California's October 27, 2009 decision, Flintkote argued vociferously that California law was the only applicable law, and won. A copy of that brief is attached as Exhibit G. Flintkote argued:

> Proper application of California's choice-of-law rules shows that California substantive law governs. This Court has already told Aviva that "[c]ourts have frequently affirmed California's interest in assuring that insurance obligations to business operating in this state are honored and that injuries sustained in this state are redressed." *Flintkote Co. v. General Accident Assur. Co*. ("Flintkote I"), 2004 WL 1977220, *5 (N.D. Cal. Sept. 7, 2004). Flintkote is headquartered in California, there are thousands of pending claims in California (in addition to many thousands of resolved claims), California law is extremely well-developed on asbestos insurance coverage issues, and Aviva acknowledges litigation with other insurers which was in California and decided under California law.

*Id*., p. 2.

> [T]he choice-of-law rules and the substantial interest California has in holding Aviva to account for harms done to its citizens mandate the application of California law as well.

*Id.*, p. 5.

Flintkote furthermore argued that the following factors mandated application of California law:

> . . . that Flintkote is an active California company, that California law was applied to the obligations of all of Flintkote's other insurers, that there are and have been many thousands of claims filed by claimants in California, that California has a strong interest in protecting its residents against rogue insurers, as indicated by the California Insurance Code (including section 790.03 on bad faith), and this Court's interest in properly applying evidentiary rules and the law of the forum.

*Id.*, p. 13.

Having litigated for decades in California, while expressly invocating California law, including against Aviva's Canadian subsidiary, Flintkote should not now be allowed to improperly use the bankruptcy stay to avoid litigating against Aviva in California in the hopes of avoiding California law.

### B. After Aviva Moved to Lift the Automatic Stay and Filed its Draft California Complaint in Flintkote's Bankruptcy, Flintkote Filed This Anticipatory Suit.

As permitted by the CU U.K. Agreement, Aviva sought to file suit in the Northern District of California to resolve the coverage disputes among the parties. Because Flintkote is in bankruptcy, however, Aviva had to seek to lift the bankruptcy stay before actually filing its suit. *Flintkote Co. v. Aviva PLC*, 2014 WL 5033218, at *1-2. Accordingly, on December 24, 2012, Aviva filed a motion with the Bankruptcy Court, seeking to lift the automatic stay so that Aviva could file its suit in San Francisco. (Ex. A.) The motion attached the draft complaint that, with very minor edits, was filed on February 19, 2013 (the earliest date such a filing was allowed).

Just over three weeks after Aviva filed its motion and draft complaint, and less than two weeks before the Bankruptcy Court was scheduled to hear argument on Aviva's motion to lift the stay, Flintkote filed this action. The reason for Flintkote's anticipatory filing is clear: to deprive Aviva of its chosen forum, a forum that Flintkote itself had chosen for decades, and to avoid the application of California law on the issue of the timing and scope of Aviva's obligation to pay claims.

Flintkote admitted to its forum shopping in its opposition to Aviva's motion to lift the bankruptcy stay. Flintkote asked the Bankruptcy Court to refuse to allow Aviva's California suit, because it seeks to avoid the application of the California appellate court's *Fuller-Austin* decision. (Ex. H, Opposition Br., at 7).

On February 4, 2013, the Bankruptcy Court granted Aviva's motion to lift the stay. In doing so, the Bankruptcy Court recognized the improper, anticipatory reason behind Flintkote's decision to file in this court:

> I'm concerned about the fact that [Flintkote] didn't bring this declaratory judgment action until they got the motion for relief from stay.

(Transcript of Feb. 4, 2013 hearing, attached as Ex. I, p. 18).

In addition, the Bankruptcy Court specifically rejected Flintkote's argument that litigating these coverage issues in Delaware would be more "efficient" than litigating in California:

> I'm not sure how any – it's any more of an estate resource waste than going on the dividend recovery litigation to California in the first place.[3] I mean, [Flintkote

[3] In addition to suing numerous of its insurers over several decades in California state and Federal courts, in April 2006, Flintkote sued its former parent company, Imperial Tobacco Canada Limited ("ITCAN"), in state court in California seeking to recover in excess of $600 million allegedly diverted from Flintkote through a dividend. *The Flintkote Company v. Imperial Tobacco,* No. CGC-06-450944 (Cal. Super.), filed in San Francisco County. *In re The Flintkote Co.*, 486 B.R. 99 at 106, 110-112 (referred to by the court as the Dividend Recovery Litigation or DRL).

> is] centered in California. The policies apparently are – have some connection to California, [Flintkote's] headquarters are there. [Flintkote's] records are there. I'm not sure why California is an inconvenient forum or why the Delaware District Court has any more interest in the case than the California District Court would have.

(Ex. I, at p. 14-15). The Court further stated:

> I – in terms of the saving resources [by litigating in Delaware], you know, [Flintkote] is hard-pressed in some respect to make that argument because [Flintkote] filed the dividend recovery litigation in California at the outset. And, you know, if [Flintkote] really wanted to conserve resources in a forum in which it selected to file its bankruptcy in Delaware could [sic] have filed that same action there and didn't.

(*Id*. at, p. 20).

Flintkote sought to distance itself from the above comments, asserting that the court later stated that it was not opining where the case should be litigated. But it is clear that the Bankruptcy Court recognized the anticipatory nature of Flintkote's filing and that Flintkote has litigated in California and continues to do so.

## IV. ARGUMENT

### A. Flintkote's Complaint Should Be Dismissed Under the Anticipatory Filing Exception to the "First-Filed" Rule

Flintkote argues that this action should go forward because it was technically the "first filed." Under the "first-filed rule," when lawsuits involving similar issues are filed in different courts, priority is usually given to the first action establishing jurisdiction. *Keymer v. Mgmt. Recruiters, Int'l, Inc.*, 169 F.3d 501, 503 n.2 (8th Cir. 1999); *Employers Ins. of Wausau v. Fox Entertainment Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008). But the first-filed rule "is not a 'rigid or inflexible rule to be mechanically applied' because it is grounded in principles of equity." *Maertin v. Armstrong World Industs., Inc.*, 241 F.Supp.2d 434, 453 (D.N.J. 2002) (quoting *Equal Employment Opportunity Comm'n v.*

*Univ. of Penn.*, 850 F.2d 969, 976-77 (3d Cir. 1988), *rev'd on other grounds*, 490 U.S. 1015 (1989)). Rather, there is a well-recognized exception. When the first-filed action is an improper race to the courthouse in anticipation of a complaint to be filed by the other party, the second suit should proceed. *See, e.g, Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995) (reversing injunction on second-filed suit given that second-filing party gave notice of intent to sue and first suit primarily sought declaratory relief); *Factors Etc., Inv. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) (allowing second-filed suit to go forward when, as here, first suit was filed in anticipation of second suit to be filed in allegedly unfavorable forum) (abrogated on other grounds in *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)).

Third Circuit cases refuse to apply the first-filed rule when the first filer has engaged in forum shopping or bad faith by filing an anticipatory action. *Equal Employment Opportunity Comm'n*, 850 F.2d at 972. In that case, the Equal Employment Opportunity Commission ("EEOC") advised the university that it had 20 days to turn over subpoenaed documents or the EEOC would file an action seeking to enforce its subpoena. *Id.* at 973. Instead of complying, the university filed an anticipatory action in the United States District Court for the District of Columbia three days before the deadline. *Id.* Like Flintkote here, the university did so in an attempt to avoid an unfavorable case applicable in the Third Circuit. *Id.* The EEOC then filed suit in Pennsylvania federal court, which the university moved to dismiss in favor of the "first-filed" action in the District of Columbia. *Id.* The Pennsylvania district court refused to dismiss the EEOC's action and the Third Circuit affirmed, explaining that the

university's anticipatory action filed to avoid the application of Pennsylvania law fit within the bad faith/forum shopping exception to the first-filed rule:

> "[w]hen the University filed the first suit in the District of Columbia Circuit, it knew the EEOC's enforcement action in the Eastern District of Pennsylvania was imminent, and that precedent in this Circuit [citation omitted] might favor resolution in favor of the EEOC…. Under these circumstances, and in light of the purposes of Title VII of the Civil Rights Act of 1964, the first-filed rule does not govern this case."

*Id.* at 972. The court further explained that "[b]ecause the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action." *Id.* at 977-8.

Flintkote did the same thing as the university in *EEOC* by filing a preemptive suit in anticipation of Aviva's imminent California Action in an attempt to avoid the application of California law. This Court should likewise refuse to apply the first-filed rule and dismiss this case in favor of a renewed California Action.

The Second Circuit will dismiss a first-filed action where the "balance of convenience" favors the second-filed action or where there are "special circumstances." *Employers of Wausau*, 522 F.3d at 275.[4] "For a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." *Id.* at 276.

---

[4] The factors to determine "balance of convenience" are essentially the same as those considered in motions to transfer venue under 28 U.S.C. § 1404(a): (1) plaintiffs' choice of forum, (2) convenience of witnesses, (3) location of relevant documents and relative ease of access to sources of proof, (4) convenience of the parties, (5) locus of operative facts, (6) availability of process to compel attendance of unwilling witnesses, and (7) the relative means of the parties. *Id.* "Special circumstances" include anticipatory filings or where forum shopping was the only reason behind the filing. *Id.* at 275-76. Those factors are discussed in Section IV.C.

Here, the first-filed rule does not apply because Flintkote filed this suit in anticipation of Aviva's California complaint, which Aviva had attached to its motion for relief from the automatic stay in Flintkote's bankruptcy proceeding. Aviva was required to obtain relief from that stay before filing its suit against Flintkote. But for the stay, Aviva would have filed the California Action before Flintkote's action. Flintkote took advantage of the fact that Aviva was required to obtain relief from the stay while Flintkote could file suit against Aviva without lifting the stay. In response to Aviva's clear intent to file its complaint in San Francisco, Flintkote tried to obtain a tactical advantage by filing an anticipatory declaratory judgment action in this Court before Aviva could obtain relief from the stay.

Any argument by Flintkote that Aviva is the anticipatory filer—because Aviva "lulled" Flintkote into believing that it would arbitrate and not file coverage litigation—is belied by the Third Circuit's decision. The Third Circuit expressly rejected Flintkote's argument that it detrimentally relied on Aviva proceeding to arbitration. *Flintkote Co.*, 2014 WL 5033218, at *6. As the Third Circuit noted, Flintkote was "on actual notice" that the parties could proceed to litigation. *Id.* When Aviva advised Flintkote that it wished to exercise its rights under the CU U.K. Agreement to litigate, Flintkote jumped the gun with the benefit of the bankruptcy stay.

Moreover, as the Bankruptcy Court correctly noted, the balance of convenience factors heavily favor California, where Flintkote is headquartered, where it filed and litigated prior asbestos coverage disputes for decades with its insurers, including Aviva and its Canadian subsidiary, and where its records and witnesses are located.

In addition, the purpose of the litigation stay in bankruptcy is to protect debtors from collection efforts, not to provide them with an offensive procedural advantage they would not otherwise have. *See, e.g., Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1000 (N.D. Ga. 1983) ("stay is not designed to be an offensive weapon – a sword – which would permit the debtor to benefit unilaterally"); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 164 (3d Cir. 1999) (bankruptcy cannot be used to gain litigation advantage).[5] This Court should not allow Flintkote to twist the bankruptcy rules to deprive Aviva of its bargained-for right to litigate in its chosen venue (which also happens to be Flintkote's "home court"). Instead, this action should be dismissed in favor of the California Action, where the parties' disputes can and should be decided.

**B. The Court Should Exercise Its Discretion to Dismiss This Suit**

The federal declaratory judgment statute provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States … *may* declare the rights and other legal relations" of an interested party. 28 U.S.C. § 2201 (emphasis added); *St. Clair Intellectual Prop. Consultants, Inc. v. Mirage Sys., Inc.*, 419 F. Supp. 2d 620, 623 (D. Del. 2006) ("[A] district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking declaratory judgment."). Anticipatory filings such as Flintkote's here, are compelling considerations against exercising such discretionary jurisdiction. *See, e.g. Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 750 (7th Cir. 1987) ("The federal declaratory judgment is not a prize to the winner

[5] Flintkote tries to distinguish *Turner* on the basis that the contract at issue there was "post-petition." Flintkote misses the point—that the stay should not be used as a weapon, regardless of whether the contract at issue is pre or post-petition. Similarly, the point from *SGL* is that bankruptcy should not provide the debtor with a litigation advantage. That the facts are somewhat different does not change these fundamental principles.

of the race to the courthouse."); *Ven-Fuel, Inc. v. Dept. of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (citations omitted); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967). This type of behavior has rightly been rejected as forum shopping. *Mission Ins. Co. v. Puritan Fashions Corp*., 706 F.2d 599, 602 n.3 (5th Cir. 1983).

The Court should exercise its discretion and dismiss this suit in favor of a renewed suit by Aviva in the Northern District of California.

**C. In the Alternative, This Action Should be Transferred to the Northern District of California under 28 USC § 1404(a).**

Under 28 U.S.C § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Third Circuit has explained that the court has "'broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer.'" *Woodbolt Distribution, LLC v. Natural Alternatives Intern., Inc.*, No. 11-1266, 2013 WL 247041, at *2 (D. Del. Jan. 23, 2013) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)). The court engages in a two-step inquiry: first asking whether the action could have been brought originally in the proposed transferee court and then asking whether the "balance of convenience" factors favor transfer. *Id*.

Here, Flintkote's action could have been brought originally in the proposed transferee court, the Northern District of California where Flintkote is headquartered and

has previously sued its insurers, including Aviva's Canadian subsidiary. In addition, the "balance of convenience" favors transfer.

These factors include certain private and public interests. *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 398 (D. Del. 2002). "Private interests" include: (1) whether the action could have been properly brought in the proposed transferee court; (2) the convenience of the parties due to their relative physical and financial conditions; (3) the convenience of the expected witnesses (but only if witnesses may be actually unavailable in one of the forums); and (4) the location of books and records (but only if they could not be produced in a certain forum). *Id*. "Public interests" include: (1) the enforceability of the judgment; (2) practical considerations about the ease, speed or expense of trial; (3) the administrative difficulty due to court congestion; (4) the local interest in deciding local controversies in the home forum; (5) the public policies of the two forums; and (6) the trial judge's familiarity with applicable state law in diversity cases. *Id*.

Private interest factors weigh in favor of transfer to the Northern District of California. Flintkote cannot dispute that this coverage dispute could have been brought in California federal court, as this is the venue that Flintkote itself previously chose to litigate coverage issues with its insurers, including Aviva, for decades. *See* Fns. 2-3. Moreover, Flintkote itself argued that the Northern District of California "is an efficient forum for resolution of Flintkote's coverage dispute with [the insurer] … [and] Flintkote is a California resident and many of the potential witnesses in the case, including certain of Flintkote's directors, officers and employees, are located in the state." *The Flintkote Company's Opposition to Aviva's Motion to Dismiss for Lack of Personal Jurisdiction*

*Pursuant to F. R. Civ. P. 12(b)(2),* p. 17-18 (D.I. 13 in Case No. 3:04-cv-01827-MHP N.D. Cal.) (attached as Exhibit J). As Flintkote stated as recently as 2009: "Not only would the State that is the principal location of the insured risk have the greatest interest in determining the issues arising under the insurance contracts, but the parties would naturally expect the law of that State to apply." Ex. G at p. 14. That state, as Flintkote has argued for decades, is California.

Convenience of the parties favors California as well. The Northern District of California is where Flintkote's headquarters and employees are located and where it keeps its insurance records. *Id*. at pp. 14-15. Indeed, as Flintkote has argued, it is the "principal location of the insured risk." *Id*. at p. 14. Moreover, the CU U.K. Agreement is the result of litigation brought by Flintkote in California, not Delaware. While Flintkote is a Delaware corporation, it does not conduct business or have any facilities here. *See, e.g. APV North America*, 295 F. Supp. 2d at 398-99 (transferring actions to Texas despite Delaware incorporation of both parties given substantial connections to Texas forum). As noted above, in granting Aviva's motion to lift the stay, Flintkote's Bankruptcy Court rejected Flintkote's argument that litigating these coverage issues in Delaware would be more efficient than litigating in California.

The anticipatory nature of Flintkote's filing is also an appropriate consideration supporting transfer. In *Cobe Labs., Inc. v. Baxter Int'l, Inc.*, No. 89 N 2084, 1990 WL 100233, at *2 (D. Colo. June 14, 1990), a case involving a patent infringement action, Baxter sent demand letters to Cobe requesting that Cobe advise if one of its products infringed upon certain Baxter patents. Cobe ignored Baxter's letters and, instead of responding, filed a declaratory judgment action in anticipation of Baxter filing an

infringement action. *Id*. The court refused to sanction Cobe's actions and transferred the case under § 1404(a). *Id. See also CQGT, LLC v. Trading Techs. Int'l, Inc.,* No. 05-cv-01584, 2006 WL 2711770, at *2 (D. Colo. Sept. 21, 2006) (transfer appropriate where first filed action was anticipatory filing); *Automotive Serv. Ass'n of New Jersey, Inc. v. Rockland Exposition, Inc.*, No. 08-3186, 2008 WL 5244282, at *3-5 (D.N.J. Dec. 12, 2008) (transferring first-filed action in favor of second-filed because first-filed suit was anticipatory filing); *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, No. 07-273, 2007 WL 4365328 (D.N.J. Dec. 11, 2007).

In *Cancer Genetics*, the court transferred an action because, in addition to the public and private interests weighing in favor of transfer, the anticipatory nature of the suit justified departing from the first-filed rule and tipped the scale in favor of transferring to the venue of the second-filed suit. *Id*. at *7. Here, it is obvious that the only reason for Flintkote's filing in this court was to win a race to the courthouse in the hope of avoiding California law unfavorable to Flintkote's position. Flintkote admitted as much in arguing its opposition to Aviva's motion for relief from the bankruptcy stay. Flintkote's anticipatory filing similarly tips the scale in favor of transfer.

There are only two relevant "public interest" factors here, and both favor California. First, as Flintkote previously acknowledged, California is Flintkote's home and has an intrinsic interest in determining coverage. Ex. G, p. 14. Second, California law will apply in this case (involving the interpretation of the CU U.K. Agreement, which settled a lawsuit in San Francisco).

Courts have held that a "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" that should not be lightly

disturbed. *APV North America*, 295 F. Supp. 2d at 398 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). Aviva was the original plaintiff who chose the Northern District of California as the proper forum. But for Flintkote's bankruptcy and the need to move to lift the stay, Aviva would have simply filed there and the instant action would clearly have been dismissed. There is no reason to allow a different result here. The bankruptcy stay is intended to protect debtors from collection, not to allow them to forum shop after a litigant demonstrates its intent to sue in a motion to lift the stay. This factor weighs in favor of transfer as well.

Finally, litigating in the California Action as opposed to this lawsuit will not prejudice Flintkote, as it will be able to assert any counterclaims that it chooses to bring in that action. On the other hand, forcing Aviva to litigate here would deprive Aviva of its bargained-for right to litigate in its chosen forum under the CU U.K. Agreement and allow Flintkote to use the bankruptcy stay to improperly jump the gun on Aviva.

### D. The "Service of Suit" Clause and Subsection 1391(c)(3) do not Preclude the Relief Requested.

Contrary to Flintkote's assertions, the policies' service of suit clause is not an absolute forum selection clause. Nor does the clause contain language precluding Aviva from selecting a forum and initiating coverage litigation. And the permissive language of the service of suit clause does not prohibit transfer under 28 U.S.C § 1404(a). Courts in Delaware, California and elsewhere recognize that the clause does not mandate a particular exclusive forum because it is silent as to the forum for litigation.[6] Instead, on

[6] *See Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671, 675 (D. Del. 2005) (unreasonable for service of suit provision to allow insured to block insurer's valid action by filing subsequent suit in another jurisdiction.); *Skylark Inv. Properties, LLC v. Navigators Ins. Co.*, No. 09-cv-435, 2009 WL 2913443, at *1-2 (S.D. Cal., Sept. 10, 2009) (denying insured's motion to remand case to state court and holding that

its face, the clause merely confirms the court's personal jurisdiction over the alien defendant. *See, Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 243, 948 A.2d 1285, 1292 (2008), which explained:

> We read the service of suit clause as it has been read by nearly every court that has considered it—as a consent to jurisdiction by the insurer and a prohibition against an insurer interfering with a forum initially chosen by the insured. The clause is no more expansive than that. It does not inhibit the insurer from filing first. Nor does it allow the insured to trump a first-filed action by the insurer.

Similarly, on its face, § 1391(c)(3) addresses where an alien defendant can be sued, not where it must be sued. And § 1391(c)(3) does not apply to alien plaintiffs. Aviva should be considered the true plaintiff due to Flintkote's impermissible attempt to use the bankruptcy stay to deprive Aviva of its chosen forum. Parties can be realigned in the interests of justice, such as where the existing alignment is a "contrivance … which otherwise would not exist." *City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co*., 197 U.S. 178, 181 (1905). Furthermore, courts have noted that the "realistic position" of the parties may be reversed where one party files an action seeking to preempt another's threatened lawsuit. *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 248 (1952); *Nw. Cent. Pipeline Corp. v. Mesa Petroleum Co.,* 576 F. Supp. 1495, 1501 (D. Del. 1983).

Aviva is the true plaintiff here, as Flintkote obtained the purported status of "plaintiff" and "first filer" only by its offensive use of the bankruptcy stay. Thus, venue here should not be governed by the alien defendant provisions of § 1391(c)(3), but by the

---

service of suit endorsement was not forum selection clause); *Berg v. MTC Electronics Technologies,* 61 Cal. App. 4th 349, 352 (Cal. Ct. App. 1998) (service of suit clauses are not mandatory forum selection clauses.). *Accord Westchester Surplus Lines Ins. Co. v. The Pass Condo. Ass'n, Inc.*, No.-0175-WS-B, 2009 WL 1904309, at *3-4 (S.D. Ala., July 1, 2009); *Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 785 N.E.2d 586, 596 (Ind. Ct. App. 2003).

general venue provision of § 1391(b)4, which applies to actions by alien plaintiffs. *See, e.g.* 3C Am. Jur. 2d Aliens and Citizens § 2129 and 3 C.J.S. Aliens § 183 (both noting that general venue section applies to action by alien plaintiff).

## V. CONCLUSION

As the Third Circuit noted, Flintkote knew that its agreement with Aviva called for litigation. And when Flintkote learned that Aviva wanted to exercise that right, it used the bankruptcy stay to deprive Aviva of its chosen California forum. Flintkote's only reason for filing this action is an attempt to establish "first filed" status and hopefully to avoid the application of California law which Flintkote acknowledges is contrary to its interests. This Court should disallow such improper procedural fencing by either dismissing this action as an improper anticipatory filing or transferring it to California.

Respectfully submitted,

Of Counsel:

Fred L. Alvarez (admitted PHV)
Arthur J. McColgan, II (admitted PHV)
Walker Wilcox Matousek LLP
One North Franklin Street
Suite 3200
Chicago, IL 60606
(312) 244-6700 (telephone)
(312) 244-6800 (facsimile)
falvarez@wwmlawyers.com
amccolgan@wwmlawyers.com

Dated: November 5, 2014

**DILWORTH PAXSON LLP**

By: */s/ Thaddeus J. Weaver*
Thaddeus J. Weaver (Id. No. 2790)
One Customs House
704 King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19801
(302) 571-8867 (telephone)
(302) 571-8875 (facsimile)
tweaver@dilworthlaw.com

Attorneys for Defendant Aviva PLC, formerly known as Commercial Union Assurance Company Ltd.